Good morning, Your Honors. My name is John Wan. I represent Interstate Underground Warehouse and Storage. And I think in order to get a good grasp of what is contained in all of those boxes and what is contained in all of our appendix, it's good to take a look at what Judge Sachs wrote about this very case back on January 12, 2018. Sort of in the middle of the summary judgment briefing, he ordered that it be remanded, I'm sorry, reassigned to the trial judge because the current filings are factually complex and perhaps seriously debatable or triable. And that's what we're here today. That's the primary basis of our appeal. Since time is limited, I want to hit two points. Our primary basis is that the district court erred when it made a finding that the building only extended a certain amount into the ceiling or into the rock. What the district court did was make a determination of fact. Fact that is best left or required to be left to the jury. And a little obvious, the court is well aware of the standard on appeal for a granting of summary judgment. The record revealed de novo, all factual allegations or determinations are resolved in favor of the non-movement and we are to be given every rational inference you can from the facts. Could I ask you preliminarily, was this policy what I've heard referred to as a manuscript policy? I am not sure if it can be defined as a manuscript policy or otherwise. Was it separately or individually negotiated or whatever ISO form may have been the starting point? There is no indication it was separately negotiated. But there is indication that the separate coverage for collapse was negotiated and requested. Was there a negotiating file? Do we know whether there's a negotiating file and is it in the record? I believe there is a file. I'm not sure if it was termed a negotiating file per. The back and forth typically between the insurance agent and the insurer's underwriter who's ever doing it. Absolutely, yeah. I believe there is a broker and also a wholesale broker and back and forth. But there is a request. We would like additional coverage for collapse. And it was in Seoul. Do we know that that, I mean, this was a preliminary, this was decided at a preliminary stage. And I would want to see the whole file on both sides to decide this building question, frankly. And is that in the record or not? Did the parties and the district parties decide to litigate it at this point without that? I believe there's, well, I subpoenaed that file and I also requested through production. But it's in the record on appeal. I believe it is. I believe the pertinent portions of that negotiation, at least vis-a-vis the additional. Have you got a, how do I find it? I'm sorry, I do not off the top of my head. It would be in the summary judgment pleadings offered by my client, Interstate, by response and opposition. And they're all in the record. Sometimes we can't find them. Well, and I apologize for that. No, I'm not saying that that's the case here. Supplementation. I think, I will address that building question. I'm happy that you brought that up. Judge, the district court judge determined this was a building. He made that finding. And we are not opposing that finding today. We are simply stating that whether or not. Yeah, but he basically ruled that the ceiling wasn't part of the building. That's what he ruled. Yeah. And that seems to me, well, my first reaction was to have a law clerk go research mine collapse insurance cases. Yeah. And there aren't any that we could find. I would have happily argued one if there were. Well, I think that would be the most relevant place to look for this. And I'm surprised that Chubb Companies would not have addressed this pretty carefully. Yeah. First internally and then with the insured. That's why I asked about what's in the record. And I think there is a distinction to be drawn between a mine, which I think has some other hazardous activities. There's more mining activity. It's my client who runs a warehouse. And he purchased insurance for his warehouse. Now, it is unique. There is a commercial activity going on in a mine building in both situations. Certainly. It's different commercial activities. Certainly. Certainly. I think we can draw. I'm not even sure insurers would issue this kind of coverage for an active mine. Certainly. Certainly. And we looked, like Your Honor observed, we looked for cases that would be on point. We did find a couple of cases that were on point. There's a side in our brief, the LEED case and the Sioux Falls case. LEED, GHR, Enterprises v. AmStates, 369 FSUP, 3D, 909. Is this in your table of authorities? It is, Your Honor. It is. And it's? I believe it's in our reply brief. And essentially that case. Well, I want the site. Oh, I'm sorry. You read so fast. Now I don't see anything starting with Enterprise in your table of authorities. No, it's LEED, L-E-A-D, GHR, Enterprises. That's not in your table of authorities. It's in our reply brief. On page Roman numeral small three. Okay. Got it. All right. In that case, examines a similar policy that covers a retaining wall. And I believe that Westchester talked about, well, this would be the same as giving status to a retaining wall. And, in fact, that case said, we don't want to decide and cannot decide whether or not a retaining wall is a portion of the building that's insured. That's a question for the jury. And that is our primary position. And, obviously, the court knows that the district court cannot make determinations of fact. And a careful reading of the judge's order in this case, which I have located or which is located at appendix. Our first number is 3678. That's the order we're appealing from. If you go to appendix 3689. I'm sorry. Further 3688. He makes the finding that my client's facility is a building. And, thus, the building coverage is applicable. It's not a finding. You just said he can't make findings. Well. That was a legal conclusion. He determines however you want to put it. But the judge. Well, that's how to put it precisely. Okay. He determines that the facility is a building and, thus, covered under the building coverage. He then goes on to, however, determine that there's a limitation, an exclusion in the collapse policy. We purchased a collapse policy. My client spent extra money on a collapse policy because of the nature of his facility, which is underground. He wanted a collapse policy. And the judge determined that the hidden decay offer of coverage in the collapse policy would not apply in this instance because it was not in the building. That was a factual determination. We've read the order. Okay. Do you want to make an argument about why it was wrong? Absolutely. It was a determination of fact that the jury should have determined. We have evidence in two boxes full of the construction of the ceiling. Essentially. Interpretation of a policy is typically a question of law. He did not interpret the policy. He determined that where the hidden. He determined. You agreed with me that he determined the ceiling was not part of the building. I agree that he said that the very top of the ceiling was part of the building. And he determined that it went several layers up. It just stopped, apparently, before he believed the decay occurred. If you read on page 12 of his order, and I know you said that you were familiar with it, he does say that the layers that make up the facility ceiling. He is not saying it's just. What is the top of the ceiling? The position of my client is that it's determined for the jury. But our position will be in the evidence. We will present to the jury is as far up as our construction went, which are these large rock screws that are applied with a poly resin to hold them in place. And then with plates to aid in the construction of the ceiling. And some of them extend eight feet. Some of them extend up to 12. They go up through the various strata that make up the ceiling. That is construction by my client. And why does there have to be construction? Well, that's to be part of the building. If I build a lake home on a hillside and use the hill for one wall, the hill is part of the building. And we agree that the surrounding area around this facility is part of the building. We're just using a demarcation line or attempting or assisting so the finder of fact can make a determination. So your argument is it goes as far as the bolt goes, and depending on how long the bolt is in any given location, that's where the ceiling is? Yeah, and as Judge Loken observed, possibly further. It's just what encompasses this building. What do you mean possibly further? You mean you build something underground and now all the way up to the earth, the surface, is part of your building? I would allow the finder of fact to make that determination. Well, how is the finder of fact going to decide that? What's the definition of building that you're going to give in the jury instruction? Building is, well, in the policy, decay is undefined and building is undefined. Are you going to tell the jury just make up a definition of building, or are you going to give them a definition in the jury instruction? Certainly, I think we'll endeavor to give a definition. We can give the address of the facility as is in the policy. And there's another method that this property was altered above or vertically. There are two large freezers that everything from holiday turkeys to meals for the military are stored in. They were frozen, and frozen very hard, and so the freeze, the frost would proceed up and through the strata, freezing it solid and making it a hardened structure that would prevent any type of collapse. So your argument is potentially as far as the ground is frozen is the ceiling? Yes. When the freezer was decommissioned and it went down, there were some ramifications, some effects. The freeze, obviously the frost came back out of the rock, and the decay was allowed to act and cause additional rockfalls. So that was something that was observed in this particular case. The only other, and I think, again, our position is this is a determination of fact. I'm entitled to present this to the jury. The cases we cite show that whether or not a particular area is covered or if it's part of a building, in our reply brief specifically, is a determination for the finder of fact. And those are the cases actually cited by the appellant as well. The next issue, very quickly, I'm getting very close on time. The claim that we have purchased this collapse coverage, and it's illusory because the ruling of the district court is the decay that occurred was outside of the building, and thus the collapse coverage does not apply. Why? Well, the only way it's going to collapse is from above. That's the definition of a collapse. And the only way it will collapse is decay. So if his ruling is accurate, then I have no collapse coverage under any circumstances. Couldn't the layer you can see, in other words, the bottom layer, the layer that's visible, that could collapse too, right? Yeah, but that would be visible and thus the decay exception. Well, it wouldn't necessarily. I mean, the layer is presumably not just paper thin there, right? I mean, it could be weaknesses in that layer. Certainly. So it's not illusory, I don't think. I mean, it may be fairly limited coverage. The way that I have read the order is that it goes up further than that. It's just he doesn't define it. Yeah, I understand your point. The point we're saying is this is not a two-dimensional analysis. In other words, you're not looking at your ceiling, much like your home has rafters, joists, a roof. Your ceiling is not the end of what you have made and what you have insured. And I see my time for rebuttal. If the court has any further questions, I'll go ahead and sit down and let counsel proceed. Mr. Orlando? Thank you, Your Honor. That time is not correct. That should be 13. That is the complete time at 13 minutes. Oh, okay, okay. No, you're right. You did it right this time. You can raise that with a button on the right of the lectern there so we can hear you better. Good morning, Your Honors. Tom Orlando for the Appalee-Westchester Surplus Lines Insurance Company, which is the primary insurance company here. I will be yielding a minute and a half to the attorney for the excess insurers. May it please the court. Below, the parties agreed with the court, both parties agreed with the court, that there is a beginning point and an end point to a building within a cave. As even Interstate concedes in its reply brief, the facility is not boundless. These bounds are defined by construction. He switched today. I think he said it doesn't necessarily have to end with the bolts. Now it could go all the way up to the grass. I think there has been a switch, Your Honor. I do think it's limited by construction. We think it's limited by construction. And the other point is that Interstate's expert Now, defend that position for me in terms of authorities, insurance or otherwise. Well, I think Your Honor was right in the opening session that there is not case law directly on point to this scenario. But generally speaking, a building I know generally, but this isn't a general. When you use the earth, what Mother Nature has provided without a bunch of engineers to facilitate and lessen the expense of creating a commercial, a structure to house a commercial enterprise. Why does engineering activity necessarily is necessarily required to define what the when the policy ambiguously refers to the structure for the enterprise as a building. Why does that automatically require some construction activity for its definition? That to me is not logical. Well, I think we start with the premise that a building is a human activity. Why? Mother Nature doesn't create buildings. That just depends on what your client meant when it used the word building in providing collapse coverage for this enterprise's structure. A building is commonly defined as a structure  The most analogous example I can use is a traditional above ground building. Take a skyscraper that may have pilings that go very deep into the earth in order to support that building. Those pilings may or may not be part of the building. But I don't think anybody argues that the earth down to its core becomes a part of the building because pilings are driven into the earth. And this is the same scenario just in reverse. This is an underground... No, that's apples and oranges to what I'm positing, which is the use of Mother Nature for the floor, the ceiling, the wall, whatever. Well, in this case, so let's go back to the creation of the mine, which I do think is important. When the mining activity took place decades ago and the cavity was created, they took out the limestone that had commercial value, but why did they stop where they stopped? They left that what's called the middle tier... Because miners aren't stupid. They don't want that to fall in on themselves. What don't they want to fall in on themselves? Well, they don't want to have to build a structure to protect them overhead when Mother Nature has provided it. And what Mother Nature provided was the middle tier of the Bethany Falls limestone, which is that layer that you can see when you look up, although it goes many feet deep. What is above that tier is, by their own expert's characterization, rubble. It's porous, it's not... But it can contribute to the decay, the natural decay of the firmer limestone. The decay that their expert posits occurred, he said occurred above that middle tier. That's the rubble zone that is susceptible to this freeze thaw because it's porous, it contains channels. So that would be above what would be the most charitable level of what could be considered the ceiling for this building would be that middle tier. That's what the miners kept in place. That was the stable layer of rock that prevented all the unstable rock above it to collapse into the cave. So at most, when the mine was created, from the miners' perspective, the ceiling of this structure would be considered that middle tier of Bethany Falls limestone, the tier that you see when you look up. What about the argument that this is ultimately a question of fact? We don't believe it is a question of fact because it is for courts to interpret terms in a contract. The term that's at issue here is building decay. As Judge Collinson pointed out, what would go to the jury on this issue? It's for the court to determine the definition. And while there may not be a lot of case law that's directly on point, courts frequently turn to the dictionary and common definition of terms to define how they work in a contract like an insurance policy. In the briefs, Interstate doesn't really give a definition of what they think the building should be. They simply say the jury should decide how far this ceiling extends up. But they've offered no evidence or not even a definition as to what they would ask the jury to do. It's not a jury question. It's a matter of contract interpretation. It was for the district court to define the term, and it is now for this court on de novo review to do the same thing. And your honors may choose to agree or disagree with what the district court did, but what should come out of this case is a legal definition of what the building is in this case. And again, the most it can mean is in terms of this facility, which Interstate defines as something that was constructed, the construction of the facility within the cave, the most that could be said what that structure is, is up to the middle level of the Bethany Falls limestone. Because that's what the miners kept in place to be the ceiling of the cave in order to protect them and the cave from what was above that level, which is not very stable rock. Do you want to address the bolts and whether the relevance of how high the bolts go and how that relates to whether there was construction above the middle tier? Yes. So I think the argument on the bolts is very telling because Interstate, I think, acknowledges that the ceiling doesn't go all the way to the surface of the earth. What they've argued, we heard a little bit something different today, but what they've argued in the briefs is that it's the bolts going up through that that makes, to the extent of the bolts, all of those rock layers part of the ceiling. And again, the analogy to me is the pilings that are driven into the earth for an above-ground structure. The fact that pilings are driven into the earth doesn't mean that all the earth that surrounds those pilings become part of the building. This is the same concept. The fact that bolts are being driven up into the ceiling for some sort of structural support does not make all of Mother Nature's rock strata part of the building. I think the other point to be made is that the bolts weren't driven up there for purposes of dealing with decay. Their own expert says that the bolts were driven up there to provide some horizontal structural support that some of these layers might shift. There are horizontal forces in those layers, and the bolts were designed to minimize that shifting or that force. It has nothing to do with decay. The fact that some hidden decay might be going on at rock layers above the lowest level, again, that's something that's going on in Mother Nature, and I think it's important to acknowledge what their own expert said. This started, this process of decay, what he calls decay, erosional thinning, started 300 million years ago. It's just hard to fathom that something that was taking place 300 million years ago in Mother Earth could be considered the building. This structure is below all of that. And so we see the bolts, no matter how high up they go, as irrelevant to the issue of what is the bounds of the building. Are you familiar with the Sixth Circuit's decision in Tabernacle Church versus State Farm? I am not, Your Honor. It's a 100-year-old church whose roof collapsed, and the supports were wood, therefore there was construction. But the court said that the definition of decay involves the deterioration of a matter from its normal state or material degrading from the natural state. A gradual degradation of the organic materials used to construct the roof and walls over time results in trusses eventually not having the strength. Now, if you leave aside the organic, inorganic, of course construction can be done with inorganic materials. That, it seems to me, is a logical way to view this. Well, we're not... It's gradual, and of course it has to be hidden. We disagree that there's any decay going on here because we think the fire was the cause of all of this, but for purposes of the appeal and the district court accepted... Well, if there's a trial, that'll be from the Senate. But the district court accepted, and we're accepting for purposes of the summary judgment proceedings and this appeal that this erosional thinning is decay. That's not really the issue on appeal. The issue is whether it's decay of the building or decay of something else. And again, we're saying that... Well, what's the something else? The something else is earth. This is decay that occurred. In that case, that was timber that was constructed. Now, it may be organic material. If it was a ceiling, there wouldn't have ever been a ceiling. There wouldn't have been a mine. I mean, it was not collapsed for decades, and then it collapsed, as buildings, whether constructed by humans or by nature, tend to do. But the building wasn't constructed by nature because the cavern was created by man in mining. Man used nature for some of the elements of the building. Man, at most, used that lower level because that was the stable layer of rock that could protect it. And it collapsed. What their expert says is that what collapsed, or the cause of the collapse, was above that in the rubble zone. That's what decay is. Decay is outside invasion of something that's been constructed. Hidden outside invasion that causes its collapse, which is what the rubble did to the previously firm middle layer. Well, and so the issue is where that decay occurred. Did it occur in the building, or did it occur in some area that's not? Why does that matter? Because in the policy, it's we only cover collapse if the hidden decay is caused by building decay. So it has to be in a building element. And so the whole— The ceiling element collapsed. The decay occurred above what could be considered the ceiling. By their own expert's definition, or finding, or opinion, the decay occurred above what would be considered the ceiling of the structure. Because, again, the ceiling of the structure is, at most, that lower layer. I'm no expert and no scientist. That strikes me as completely illogical. If the ceiling is the firm stuff, and by weight or water or whatever it is that invades it, it collapses. What collapses is the ceiling, not the rubble. The rubble was always wanting to collapse. The ceiling may have collapsed and did. Certainly, it collapsed in the middle, what's called the middle tier of the Bethany Falls limestone, that lower layer, did collapse in. But what's at issue for coverage is what caused that to collapse. It's not enough that it simply collapsed in. You have to look at the cause. It has to be caused by building decay. And the decay occurred above that layer, which is not part of the building. Again, it would be analogous to an above-ground building. If some decay was occurring down in Mother Earth that caused a shift of the earth and the building to collapse, we wouldn't call that building decay. That would be some earth movement. That's something that happens naturally within the earth. It's not something that happens with the building. I see that I'm up on my minute and a half for co-counsel, so I will yield the balance of my time. May it please the Court. My name is Ann Kirk. I represent the excess insurers in this case. It's the plaintiffs who are not Westchester. So that's Amlin Corporate Member Limited, Ace Capital Limited, Catlin Syndicate Limited, and Ace Capital Five Limited. These are all excess insurers in this case and issued a policy that followed form to the primary policy. So essentially our coverage arguments about coverage under this policy turn on whether there is coverage under Westchester's policy. How could your clients win if Westchester loses or lose if Westchester wins? We can't, Your Honor. Unfortunately, we're part of the appeal because the claims as submitted would have exceeded into our layer had the- Why do we need to say anything more? Well, if you don't want to hear further from me, then I'm happy to say that. What argument do you have that could make a difference to the issue we just heard? I don't. My policy follows form, and for the same reasons Westchester should win, I also feel that- That's what I thought. Yeah, okay. If there's no other questions for me, then I'll stay seated. One thing I did want to note, there's a vexatious refusal to pay claim that isn't pertaining to my client. Neither side has argued this, and it's in the briefs, and I'm sure Your Honors can address it that way. But this issue about the primary policy has not yet been exhausted. Yes. That's premature, isn't it? I mean, if the district court has affirmed who cares, so to speak, if the district court is reversed, is that an issue for which there's a record that we could let the excess carriers out, or somehow limit their exposure at this stage? I don't think so, Your Honor. I think it's correct that if it's reversed, then I would also have to go back down to the district court. There has been no- I was worried about that, because I don't understand the intricacies of that issue. Right. There's no finding as to the extent of the exposure, if there is coverage. So there would need to be a finding as to my client as well. Thank you, Your Honors. Mr. Watt, do you have some time? No, he does, Your Honor. 247. I'll make it quick. I think the discussions we just had about- and to clarify, we have the remaining layers are Bethany Falls Limestone, then we move up to Galesburg and Stark Shale Strata, followed by Winterset Limestone. If that's not a question of fact, to bring my expert and his expert in front of a jury to sort this out, I'm not sure if there will ever be one. And under the standard, I only need one. To address this concept of decay and building, we all know that the idiom of constructing an insurance contract is that if you have a vague term, it's construed against the drafter. Obviously, Westchester is the drafter. Building is not defined. Decay is not defined. And decay, I think, as Judge Loken observed, doesn't necessarily have to be a rotting piece of fruit. It can be the lessening of strength. And we cite that in our brief. There's language in cases, including in the state of Missouri, that address decay as not necessarily wood rot. It doesn't have to be. In this case, we have decay of the rock. That is right above. And again, there's a distinct disagreement between, I think, how counsel portrayed where this decay occurred and with what my expert were saying. We have those layers. I think a jury needs to get the evidence in front of them. Here's where the decay occurred. They can decide, is that part of building decay? But it does not have to be wood. It does not have to be an organic material, although my expert believes some of this stuff is organic that is up there because of the nature of the tidal flow, as they talked about 3 million years ago or however long ago, well before we were here. But I think that's a question that a jury should address. I think that's a question that simply a reasonable jury could find, that this decay occurred within the building and caused the collapse. Absolutely. In fact, I'm counting on it. So I think to grant some re-judgment by saying, I've determined the facts and the decay is not building decay, is grounds for reversal of this. And the other thing that has come to light and that I should have mentioned but my time is limited, there's also corrosion and weakening of the ceiling bolts. Our expert will say that he believes that's a problem, that that could be decay that may have caused this. And I'm glad he mentioned that these bolts were actually installed to prevent the horizontal strata from shifting against each other, and not because of this decay. And the reason is because it's hidden decay. If we had known there was decay up there and we were bolting for it, then that creates a problem where it's not necessarily hidden, and we probably need to do something about it, whether it's more bolting and other particular steps. So that's why it was done. If it had been decay that we knew about, then that's not hidden decay. So if there's any questions, I'd be happy to take them. Very good. Thank you, Counsel. Thank you for your time this morning, Your Honors. The case has been well briefed and argued. Unusual situation. We'll take it under advisement.